UNITED STATES *v.* FRANK P. DOW CO., INC. (No. 3292)[1]

United States Court of Customs and Patent Appeals, April 29, 1930

*Charles D. Lawrence,* Assistant Attorney General (*Hugo· P. Geisler,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument April 17, 1930, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, del'vered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise consisting of hollow cylindrical or tubular steel vessels known as dephlegmators, used in conjunction with a pump, heater, condenser, and probably other devices and apparatus in the process of the manufacture of gasoline from crude oil, was assessed for duty by the collector at the port of Los Angeles as parts of machines at 30 per centum ad valorem under paragraph 372 of the Tariff Act of 1922, which reads as follows:

PAR. 372. Steam engines and steam locomotives, 15 per centum ad valorem; sewing machines, and parts thereof, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each,

---

30 per centum ad valorem; cash registers, and parts thereof, 25 per centum ad valorem; printing presses, not specially provided for, lawn mowers, and machine tools and parts of machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and typewriting machines, 30 per centum ad valorem; *all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem:* * * *. [Italics ours.]

The importer protested, claiming that the merchandise was properly dutiable as "cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty," at 25 per centum ad valorem under paragraph 328, which reads:

PAR. 328. Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, and stays, not thinner than sixty-five one-thousandths of an inch, if not less than three-eighths of an inch in diameter, three-fourths of 1 cent per pound; if less than three-eighths and not less than one-fourth of an inch in diameter, 1¼ cents per pound; if less than one-fourth of an inch in diameter, 1¾ cents per pound: *Provided,* That no tubes, pipes, flues, or stays made of charcoal iron shall pay a less rate of duty than 1¼ cents per pound; *cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty;* welded cylindrical furnaces, tubes and flues made from plate metal, whether corrugated, ribbed, or otherwise reinforced against collapsing pressure, and all other finished or unfinished iron or steel tubes not specially provided for, 25 per centum ad valorem; flexible metal tubing or hose, whether covered with wire or other material, including any appliances or attachments affixed thereto, not specially provided for, and rigid iron or steel tubes or pipes prepared and lined or coated in any manner suitable for use as conduits for electrical conductors, 30 per centum ad valorem. [Italics ours.]

On the trial below the importer called but one witness, Fritz Loeffler. He testified that he was a mechanical engineer and president of the Techno Service Corporation, importer of the involved merchandise; that the involved dephlegmators were insulated and were used in a complicated oil-refining process; that, when in use, they stood in a vertical position on feet or brackets; and that they were connected with the machinery—pump, heater, condenser, and other apparatus—used in the refining process. It appears from his testimony that the oil is first heated, then forced into a "cracking chamber" where the "separation of the gasoline from the oil takes place," and then, still under pressure from the pump, it is forced into the dephlegmator, where, due to gravity alone, so it is said, the gas rises to the top and the oil falls to the bottom. The oil is drained from the dephlegmator, while the gas passes to a condenser where it is

purified by the removal of water. The witness said, if we correctly understand his testimony, that the oil was under pressure from the pump from the time it entered the heater until it was forced into the dephlegmator, where it remained for about one-half hour. The type of pump used does not appear.

The witness, Bonheim, an examiner of merchandise, called by the Government, said that, when in use, dephlegmators "had flanges and openings and valves with which they were connected with other bits of the machinery."

The trial court held that the involved articles performed no mechanical operations, and were merely "receptacles for storing the liquid gas and oil temporarily;" and that they were specifically provided for in paragraph 328, and, accordingly, the court sustained the protests.

It is contended by counsel for the Government that the involved articles are parts of machines; and that they are not of the character of the articles intended to be covered by the provision for "cylindrical and tubular tanks or vessels" contained in paragraph 328. It is argued that this case is controlled by our decisions in *United States* v. *Sheldon & Co.*, 15 Ct. Cust. Appls. 308, T. D. 42484, and *United States* v. *Moore & McCormack Co.*, 15 Ct. Cust. Appls. 322, T. D. 42489.

Counsel for appellee, on the other hand, contend that the articles in question are not parts of machinery; that they perform no mechanical operations and are used as vessels or tanks only; that, if it might be argued that they are parts of the machinery or equipment used in producing and refining gasoline, they are, nevertheless, not parts of machines; that the term "machinery" is more comprehensive than the term "machines"; that the collector did not consider the dephlegmators as parts of machines, but attempted to classify them as parts of machinery; and that, if they are parts of machines, they are, nevertheless, more specifically provided for under paragraph 328.

The evidence in the case is very unsatisfactory.

The Government's witness, Bonheim, had seen the dephlegmators connected and ready for use, but he had never seen the machines or machinery to which they were connected in operation. It is true that he stated he had received information relative to the operation of the machinery and the function of the dephlegmators from the engineer in charge of the refinery, but he was unable to recall the information thus received.

The importer relied upon the testimony of the witness, Loeffler. It is evident from his testimony that the witness was either not sufficiently familiar with the machinery used in the process of refining gasoline to give a clear explanation of it and its functions, or counsel for the importer did not consider the matter of great importance. In

any event, the court has not been furnished with an adequate explanation of the character and operations of the various machines and devices used in connection with the involved articles.

We are told that a pump, a heater, and a "cracking chamber" are employed, but they are not described. What happens to the vaporized oil or gasoline after it leaves the condenser, and what processes the oil is subjected to after it leaves the dephlegmator, can only be conjectured. There is a suggestion, but nothing more, that several dephlegmators are used in the refining process. Whether more than one is necessary does not appear.

It is obvious that the involved articles were not designed for use as mere vessels or tanks for holding gas, liquids, or other materials; nor are they so used. They are insulated to fit them for use either as parts of, or in direct connection with, the machines used in the refining process. They have no other use. According to the evidence, the oil and gas are under compression and are forced into the dephlegmators; what effect this may have, or what function it may perform, is not explained.

It is true that the witness, Loeffler, said that the oil and gas are separated in the dephlegmator by gravity. He also testified that the dephlegmator was used in connection with machines in a complicated refining process. How, then, can it be said, from the meager testimony in the case, that a dephlegmator is not a part of a complicated machine?

The burden was upon the importer of proving that the articles in question were not parts of machines, and that they were nothing more than cylindrical or tubular tanks or vessels for the mere holding of gas, liquids, or other materials, that is to say, that they were nothing more than containers. Surely, under the circumstances, the court is entitled to a clear explanation of all facts necessary to an intelligent determination of the issues.

The witness, Loeffler, testified that the involved articles were known as dephlegmators. He said that they were not condensers, and that they had been insulated to prevent them functioning as such. Nevertheless, the dictionaries define "dephlegmator" as follows:

A form of condensing apparatus for stills, consisting of broad sheets of tinned copper soldered together, so as to leave narrow spaces between them.—*Knight's Mechanical Dictionary.*

n. A condensing-apparatus, as of a still.—*Funk & Wägnalls New Standard Dictionary.*

An instrument or apparatus in which water is separated by evaporation or distillation; specif., the part of a distilling apparatus in which a partial separation of the vapors of water and alcohol is effected, as by means of cold metallic diaphragms.—*Webster's New International Dictionary.*

Obviously, if the testimony of the witness, Loeffler, is correct as to their construction and use, the involved articles are not dephlegmators within the common understanding of that term.

In the case of *United States* v. *Sheldon & Co.*, *supra*, this court held that a condenser with its fittings, coils, valves, and other appurtenances, used in connection with a compressor for liquefying ammonia, was dutiable as a part of a machine under paragraph 372, *supra*.

In the case of *United States* v. *Moore & McCormack Co.*, *supra*, we held that marine surface condensers, "consisting of cylindrical metal vessels containing tubes, and used for the condensation of exhaust steam, in connection with steam engines, * * * ready to be connected with pumps and steam pipes essential to their operation," were dutiable as parts of machines under paragraph 372, *supra*.

Counsel for appellee has given considerable consideration in his brief to the distinction between machinery and machines. We express no opinion as to the merits of the distinctions there made, because of the state of the record. There is no evidence in the case to serve as a foundation for such a discussion.

In our opinion, the importer has failed to prove that dephlegmators are nothing more than cylindrical or tubular containers for gas, liquids, or other materials, and that they are not, in fact, parts of the machines with which they are designed to be used and to which they are connected.

For the reasons stated, the judgment is *reversed*.